RECEIVED

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

2019 AUG 21  A 10: 53

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

| | | |
|---|---|---|
| CATHERINE HELMUTH, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO.: |
| | ) | 2:19-CV-601 |
| TROY UNIVERSITY, | ) | |
| | ) | JURY DEMAND |
| Defendant. | ) | |

## COMPLAINT

## I.  INTRODUCTION

1.  This is an action alleging disability discrimination and unlawful medical inquiries in violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. 794 ("Section 504") and Title II of the Americans with Disabilities Act, as amended ("ADA"), 42 U.S.C. 12101 et. seq.  Plaintiff Catherine Helmuth is a qualified individual with a disability, has a history of a disability, and/or is regarded as disabled.  Defendant Troy University discriminated against Plaintiff by, *inter alia*, subjecting her to unlawful medical inquiries and failing to hire her based on her status as a person with disabilities.  Plaintiff seeks injunctive relief, equitable relief, reinstatement, lost wages and benefits, compensatory damages, and reasonable attorney fees and costs.

1

2.      Plaintiff also alleges gender discrimination in violation of Title VII of the Act of Congress known as the "Civil Rights Act of 1964," 42 U.S.C. § 2000e et seq. as amended, including the Civil Rights Act of 1991. Plaintiff Catherine Helmuth is a female who has been intentionally discriminated against and denied equal opportunities, benefits, and services because of her gender. Defendant Troy University discriminated against Plaintiff and failed to hire her based on her gender.

## II.     JURISDICTION

3.      This Court has jurisdiction in accordance with 28 U.S.C. § 1331. Venue is proper pursuant to 28 U.S.C. § 1391.

4.      Plaintiff has fulfilled all conditions precedent to the institution of this action under Title VII. Plaintiff timely filed this Complaint within ninety (90) days of the receipt of a Notice of Right to Sue issued by the EEOC. Plaintiff's claims under Title II of the ADA and Section 504 of the Rehabilitation Act do not require the exhaustion of administrative remedies.

## III.    PARTIES

5.      Plaintiff Catherine Helmuth is a female over the age of 19 years and a resident of Cook County, Illinois. Plaintiff is an individual with a disability, has a history of a disability, and is regarded by Defendant as disabled. Despite this disability, with or without reasonable accommodations, Plaintiff could perform the

2

essential functions of the position of Assistant Professor and other positions. Consequently, Plaintiff is a qualified individual with a disability, as defined under the ADA and an individual with a disability under Section 504 of the Rehabilitation Act.

6.      Defendant Troy University is located in Pike County, Alabama. It is an employer pursuant to Title VII of the Civil Rights Act. Troy is also an "employer" as defined under the ADA. Defendant is a public entity in accordance with 42 U.S.C. Section 12131(1). Defendant is also a recipient of federal financial assistance. 34 C.F.R. 104.3.

## IV.    **FACTUAL ALLEGATIONS**

7.      Plaintiff re-alleges and incorporates by reference paragraphs 1 through 6 above with the same force and effect as if fully set out in specific detail herein below.

8.      Defendant intentionally and with malice or reckless indifference, discriminated against Plaintiff on the basis of Plaintiff's disabilities, her history of disabilities, and Defendant's perception of Plaintiff as a disabled person. Defendant made unlawful medical inquiries of Plaintiff. Defendant also intentionally, and with malice or reckless indifference, harassed, discriminated against Plaintiff on the basis of her gender, with respect to hiring, compensation, and other terms, conditions and privileges of employment.

3

9.     Plaintiff has been diagnosed with a bone condition, which substantially limits the normal functioning of Plaintiff's orthopedic system.  Further, the plaintiff has been also diagnosed with ophthalmic conditions and an endocrine disorder, which substantially limit one or more major life activities.

10.    In the fall of 2017, Plaintiff was enrolled at Auburn University in the Raymond J. Harbert College of Business.  In anticipation of her Spring 2018 graduation and receipt of her PhD in Business Administration, Plaintiff began looking for full time employment.

11.    In November of 2017, Dr. Robert Wheatley, Department Chair of the Management Department within Troy University's Sorrell College of Business, sent Plaintiff an email stating that there was an open position within the Department of Management, Human Resources, and Law at Troy University.  He said the start date would be January 1, 2018 and that if Plaintiff was interested, she needed to apply quickly.

12.    Plaintiff emailed Dr. Wheatley and let him know that she was interested in the position, but was concerned about the January 2018 start date because she was scheduled to have surgery on December 6, 2017.  As a result, Plaintiff asked Dr. Wheatley about the possibility of other positions in the department with later starting dates.

13.   Dr. Wheatley emailed back, telling her to apply and saying that they could discuss the actual position later.

14.   Plaintiff immediately completed an online application for employment at Troy University.

15.   Plaintiff was then and is now qualified for the position of Assistant Professor in the Department of Management, Human Resources, and Law at Troy University as well as other positions.

16.   On January 9, 2018, Plaintiff participated in a WebEx (phone call with video component) interview with Dr. Wheatley and Dr. Hank Findley, the Senior Associate Dean for Academic Affairs.

17.   In addition to discussing the teaching requirements for the Assistant Professor position, the interview participants discussed the position's location at Defendant's campus in Troy.

18.   Plaintiff said that, due to medical issues, she was currently unable to drive, and would prefer to be located at the same campus as her husband, if possible, who would be able to help with her transportation needs.  Plaintiff's husband was then an Assistant Professor at Troy University in the Sorrell College of Business, and worked primarily at the Phenix City campus.

19.   Dr. Findley asked if Plaintiff's inability to drive was a permanent or

5

transient disability and Plaintiff said her doctors were unsure at this time.  Pike Ca

20.     Dr. Findley said the position was originally for Troy's campus in Dothan and that the Department would want her to drive to Dothan to teach because the Department currently needed a professor to teach classes at that location.

21.     Additionally, Dr. Findley discussed a March 1, 2018 starting date and inquired about Plaintiff's ability to teach online starting on March 1, 2018.

22.     A few weeks later, Plaintiff was invited for a formal, in person interview at Troy's campus in Troy.  Gail Layton, the secretary for the Dean's Office at the Sorrell College, began emailing with Plaintiff to coordinate the details of her interview, like lodging, transportation, and schedule of events.

23.     Ms. Layton did not ask the location from which Plaintiff was traveling nor did she indicate that Plaintiff might need pre-approval for any travel expenses.

24.     As a result of Plaintiff's disabilities and recent surgery, she needed several reasonable accommodations for the in-person visit to Troy and interview process.  Plaintiff emailed Ms. Layton a list of requests.

25.     On February 5, 2018, Plaintiff participated in the on-campus interview at Troy.

26.     As a result of her disabilities and recent surgery, Plaintiff was in a wheelchair for her interview.  Plaintiff's husband pushed her wheelchair to the

various interview appointments.

27. Plaintiff first met with Dr. Wheatley, who provided her with a printed handout of departmental guidelines, including requiring at least three publications for tenure.

28. Later in the day Plaintiff interviewed separately with Dr. Findley and then with Dr. Jack Hawkins.

29. During Dr. Hawkins' interview, he asked multiple questions about how Plaintiff became disabled, the prognosis of her disability, and the nature and severity of her disability.

30. While waiting between appointments on February 5, Plaintiff's husband, Plaintiff, and Dr. Wheatley discussed open positions in the Management Department. Dr. Wheatley communicated that there would be an open assistant professor position in his Department at the Phenix City campus.

31. Dr. Aaron Lucas was set to retire at the end of the Spring 2018 semester.

32. On February 21, 2018, Dr. Findley called Plaintiff with a job offer. Specifically, Dr. Findley offered Plaintiff an Assistant Professor position at Troy's campus in Troy, with a salary of $90,000.

33. Plaintiff asked for time to consider the offer and Dr. Findley agreed.

34. On information and belief, this offer is lower than starting salary offers

7

made for similar positions to similarly situated candidates who are male.

35. On information and belief, this offer is lower than starting offers made for similar positions to similarly situated candidates who do not have disabilities.

36. On February 23, 2018, Plaintiff spoke with Dr. Findley again on the phone. Plaintiff asked if there was a position open at the Phenix City location.

37. Plaintiff asserts that there was a position open at that time and considering Plaintiff for that vacant position would have been a reasonable accommodation for her disability.

38. Considering Plaintiff for the vacant position at the Phenix City campus would also be consistent with the way Defendant has treated male candidates for positions within the Department in the past.

39. Alternately, if the Dothan location was the only position vacant, allowing Plaintiff to teach using Troy's distance education instructional setups (i.e., "Zoom" classroom setup or providing Plaintiff an online section) for that vacant position would have been a reasonable accommodation for her disability.

40. During this phone call with Dr. Findley, Plaintiff questioned the starting salary amount and noted the disparity between the amount initially offered to her, a female with a disability, and the amount initially offered to her husband, a male who does not have a disability.

8

41.    Plaintiff also questioned the tenure requirements, particularly the differences between what Dr. Wheatley told Plaintiff (three publications) back on February 5 and what Dr. Findley was then saying (something more than three likely necessary). Dr. Findley told Plaintiff that the guidelines for tenure could continue to increase and that professors may, or may not, be grandfathered into the prior departmental tenure requirements that were established at the time of their hire.

42.    Plaintiff tried to ask more questions about this tenure 'policy', but Dr. Findley indicated he would not discuss this topic in detail any further.

43.    At the end of the call, Dr. Findley said that he would discuss the position's location and salary with the Dean, Dr. Judson Edwards, and then get back with Plaintiff.

44.    Plaintiff asked to speak with the Dean directly, but Dr. Findley said no.

45.    Plaintiff understood that the process of negotiating was still underway.

46.    Plaintiff did not reject any offer of employment from Troy.

47.    On February 27, 2018, Dr. Findley emailed Plaintiff. He thanked Plaintiff for talking on the 21st and then stated that he was sorry she had rejected Troy's verbal job offer. He said that, after consulting with the Dean, he was unable to extend another offer, and Troy's previous offer was no longer on the table.

48.    Further, he said there were no job openings on the Phenix City campus.

9

49.     Also on February 27, 2018, Ms. Layton emailed Plaintiff, letting Plaintiff know that she had received Plaintiff's travel receipts and would be sending a travel expense form for Plaintiff's signature once she completed it.

50.     On March 21, 2018, after not hearing anything from Ms. Layton, Plaintiff emailed her again about the reimbursement form.

51.     Dr. Findley emailed Plaintiff back and said Troy would not be reimbursing Plaintiff.

52.     On information and belief, Troy has paid the travel expenses for similarly situated male employment candidates.

53.     On information and belief, Troy has paid the travel expenses for similarly situated non-disabled employment candidates.

54.     Troy hired a male candidate without a disability for the Assistant Professor position for which Plaintiff initially applied.

55.     Around that same time period, Troy also hired at least one other candidate without a disability for an Assistant Professor position for which Plaintiff was qualified.

56.     As a result of Defendant's actions, Plaintiff has suffered extreme harm, including, but not limited to, loss of employment opportunities, denial of wages, compensation, and other benefits and conditions of employment.  Additionally,

10

Plaintiff has suffered injury including pain, humiliation, emotional distress, mental anguish and suffering, and loss of enjoyment of life.

## V.   **CAUSES OF ACTION**

57.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 56 above with the same force and effect as if fully set out in specific detail herein below.

### Count I-- Unlawful Discrimination in Violation of the ADA and the Rehabilitation Act

58.    Plaintiff is a person with a disability, has a history of disability, and/or is regarded as disabled. *See* 42 U.S.C. 12102.

59.    Defendant is an employer in accordance with 42 U.S.C. 12111(5). Defendant is a public entity in accordance with 42 U.S.C. 12131(1). Defendant receives federal financial assistance pursuant to Section 504 of the Rehabilitation Act.

60.    Plaintiff is a qualified individual with a disability as defined under the ADA and Section 504. Furthermore, Defendant perceived Plaintiff as disabled and had a record of Plaintiff's disability.

61.    Despite Plaintiff's disabilities, with or without reasonable accommodation, she is able to perform the essential functions of the position of Assistant Professor. Thus, Plaintiff meets the definition of a "qualified individual

11

with a disability". See 42 U.S.C. 12111 and 42 U.S.C. 12131(2).

62.   Under the ADA and Section 504, Defendant is prohibited from discriminating against Plaintiff, a qualified individual, on the basis of disability in regard to, inter alia, job application procedures, hiring, and other terms, conditions, and privileges of employment.  42 U.S.C. 12112(a).

63.   Plaintiff applied for the position of Assistant Professor.

64.   Plaintiff requested reasonable accommodations.

65.   The person hired into the position of Assistant Professor, on information and belief, was not an individual with a disability and/or was not perceived by the Defendant as suffering from a disability.

66.   In failing to hire the Plaintiff, Defendant has maliciously, intentionally, and with reckless disregard discriminated against Plaintiff due to her disability, her record of disability, and/or her perceived disability; and has otherwise classified and segregated Plaintiff in a way that has adversely affected her job opportunities because of her disability, history of disability, and the perception of her as a person with a disability. See 42 U.S.C. 12112; 42 U.S.C. 12132.

67.   Defendant refused to make a reasonable accommodation to Plaintiff's known or perceived physical limitations, which is a violation of the ADA and Section 504.  Such an accommodation would not have imposed an undue hardship on the

12

operation of the Defendant's business.

68.    Defendant's initial salary offer, unilateral removal of the offer, and refusal to provide reimbursement for Plaintiff's travel expenses were also instances of unlawful discrimination based on Plaintiff's status as a person with a "disability" as that term is defined under the ADA, and/or Plaintiff's request for reasonable accommodations under the ADA and Section 504.

69.    As a proximate result, Plaintiff has suffered extreme harm including, but not limited to, loss of employment, denial of wages, compensation and other benefits and conditions of employment.  Plaintiff has also suffered injury including, pain, humiliation, mental anguish and suffering.

## Count II – Improper Medical Inquiry in Violation of the ADA and the Rehabilitation Act

70.    Plaintiff incorporates each and every paragraph above as if fully set out herein.

71.    Plaintiff applied for and was qualified for the position of Assistant Professor.

72.    Defendant unlawfully subjected Plaintiff, a pre-offer applicant, to improper medical inquiries.

73.    Defendant's medical inquiries were designed to determine whether

Plaintiff was an individual with a disability and to determine the nature and severity of any disability she may have had.

74.     The unlawful medical inquiries of Plaintiff were not job related.   They were used by Defendant to identify and exclude persons with disabilities or perceived disabilities, such as the Plaintiff, from consideration for employment.

75.     Defendant's employees shared Plaintiff's confidential medical and disability-related information with each other.

76.     As a result of Defendant's improper medical inquires of Plaintiff, Defendant failed to hire Plaintiff due to her disability and/or the Defendant's perception of Plaintiff as disabled.

77.     These actions by the Defendant violate Plaintiff's rights under the ADA and Section 504.

78.     Plaintiff has suffered economic damages as well as emotional distress resulting from this unlawful treatment. Plaintiff has and continues to incur expenses and fees as a result of this unlawful treatment.

### Count III– Unlawful Gender Discrimination in Violation of Title VII

79.     Plaintiff, a female, is and was qualified for the position of Assistant Professor. However, Defendant intentionally discriminated against Plaintiff because of her gender by intentionally failing to hire her.

14

80.     Defendant's initial salary offer, unilateral removal of the offer, and refusal to provide reimbursement for Plaintiff's travel expenses are also instances of unlawful discrimination based on Plaintiff's gender.

81.     Defendant gave better offers of salary and benefits to male employees with credentials inferior to Plaintiff's.

82.     Defendant hired a male employee for the position of Assistant Professor for which Plaintiff was a candidate.

83.     Defendant provided travel reimbursement to male employment candidates in circumstances similar to Plaintiff's, but did not provide reimbursement to Plaintiff, a female.

84.     The reasons proffered by Defendant for the disparate treatment of Plaintiff, a female, are unworthy of credence and a pretext for discrimination.

85.     Defendant has intentionally, willfully, and with deliberate indifference and without justification deprived Plaintiff of her federal rights, based on her gender, as described herein.  This deprivation violates Plaintiff's rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C.§ 2000e et seq.

86.     As a proximate result, Plaintiff has suffered extreme harm including, but not limited to, loss of employment, denial of wages, compensation and other benefits and conditions of employment.  Plaintiff has also suffered injury including, pain,

15

humiliation, mental anguish and suffering.

## VI.   **PRAYER FOR RELIEF**

**WHEREFORE**, the Plaintiff respectfully prays that this Court assume jurisdiction of this action and after trial:

1.    Issue a declaratory judgment that the employment practices, policies, procedures, conditions, and customs that led to the discrimination by Defendant violate Plaintiff's rights as secured by the Americans with Disabilities Act, 42 U.S.C. §12101, et seq. ("ADA"), Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (Section 504) Title VII of the Act of Congress known as the "Civil Rights Act of 1964," 42 U.S.C. § 2000e *et seq.* as amended, including the Civil Rights Act of 1991;

2.    Grant Plaintiff a permanent injunction enjoining Defendant, its agents, successors, employees, attorneys and those acting in concert with the Defendant and at the Defendant's request, from continuing to violate the ADA, Title VII, and Section 504.

3.    Enter an Order requiring the Defendant to make Plaintiff whole by awarding Plaintiff the position of Assistant Professor, back-pay (plus interest), loss benefits, compensatory and nominal damages.

4.    Plaintiff further prays for such other and further relief and benefits as the

16

cause of justice may require, including, but not limited to, an award of costs, attorney's fees and expenses incurred by this litigation.

5.    Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged in this suit, and this action for injunctive, declaratory and other relief is her only means of securing adequate relief.

**THE PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY.**

Respectfully submitted,

*Rachel M L*

Rachel L. McGinley
Alabama State Bar No.: 1892-A64M
**WIGGINS,   CHILDS,   PANTAZIS,
FISHER, GOLDFARB**
The Kress Building
301 19th Street North
Birmingham, Alabama  35203
(205) 314-0500

**PLEASE SERVE DEFENDANT BY
CERTIFIED MAIL, RETURN RECEIPT
REQUESTED AT THE FOLLOWING ADDRESS:**
Troy University
111 Adams Administration Building
Troy, Alabama 36082

*Rachel M L*

OF COUNSEL

17